PHILIP ALLEN *vs.* THE NATIONAL BANK OF COMMERCE &
TRUST COMPANY OF PROVIDENCE, *Admr. d.b.n.c.t.a.*

JULY 31, 1942.

PRESENT: Flynn, C.,J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is the same suit in equity in which we handed down an opinion dated April 18, 1941, and reported in 66 R. I. 373, 19 A. 2d. 311.   In the opinion we denied and dismissed the appeal of the complainant from a decree of the superior court sustaining the respondent's demurrer, based on ten grounds, to the original bill of complaint.   Our conclusion was based solely on the fourth, eighth and ninth grounds of demurrer, the others not being discussed by us.

Thereafter the complainant,· by leave of the superior court, filed an amended bill of complaint; and a demurrer thereto by the respondent was sustained by· that court. The complainant then filed a motion for leave to amend paragraph 12 of the amended bill; and this motion was granted by the superior court, in a decree from which the respondent took an appeal to this court.   The bill was amended according to the leave granted; and a demurrer, based on ten grounds, to the second amended bill was sustained on all these grounds by a decree of the superior court, from which the complainant took an appeal to this court.  The cause is now before us on these two appeals.

As stated at the beginning of our former opinion, this suit was brought on July 1, 1939 against the present administrator of the estate of Crawford Allen, who deceased in 1872, to compel payment of a claim against that estate, for $100,000 and accrued interest, which was filed December 14, 1938 and was disallowed by the respondent as administrator. This claim was based on an alleged statutory liability by the

deceased for a debt of the Woonsocket Company, a former Rhode Island corporation, which debt is alleged to have been incurred by it when he was its sole stockholder and to have been payable by it to Charles B. Allen, who was the complainant's father and from whom the right to collect the unpaid balance of such indebtedness is alleged to have passed to the complainant.

In the original bill of complaint in this cause it was alleged that on June 23, 1880, as of November, 1879, Charles B. Allen obtained a judgment against the Woonsocket Company for $141,696.76, and costs; that before service of any execution on this judgment that corporation made an assignment for the benefit of its creditors; that on this indebtedness he received, from the assignee and from some source not definitely known, sums that reduced the indebtedness on this judgment to a net amount of substantially $100,000.

It was also alleged in the original bill of complaint that when the final account of the assignee had been allowed, on June 5, 1888, and distribution had been made thereunder, no property of the Woonsocket Company "was available to pay the balance of $100,000 then due said Charles B. Allen on his judgment debt against said Woonsocket Company as evidenced by an instrument in writing dated June 1, 1885, signed by the Allen's Print Works and delivered to said Charles B. Allen", a copy of which was annexed to the bill of complaint as an exhibit, and is annexed as "Exhibit A" to the present second amended bill of complaint in this cause.

This instrument was an acknowledgment by the Allen's Print Works, a Rhode Island corporation, that it was then indebted to Charles B. Allen in the sum of $100,000, to be paid to him not under five years from the date thereof and subject to the prior payment of all its other debts then existing and certain other debts and expenses that might be incurred by it; and it agreed to pay in the meantime interest on that sum at the rate of 5% per annum, at the same time as it should pay interest to its other creditors. It was stated,

on information and belief, in the original bill of complaint, that this instrument "represents the balance due as of the date of said instrument to Charles B. Allen on his judgment debt against said Woonsocket Company."

The complainant then based his asserted present right, to enforce against the estate of Crawford Allen the unpaid balance of that judgment debt, upon a transfer by Charles B. Allen to his wife, and a later transfer by her to the complainant, of the above-described acknowledgment of indebtedness, such transfers being then alleged by the complainant to have been made with the intent of conveying thereby the unpaid balance of that judgment debt.

The alleged right of Charles B. Allen to enforce against the estate of Crawford Allen the former's judgment debt against the Woonsocket Company, which debt was and is alleged to have been for indebtedness incurred by that corporation when Crawford Allen was the owner of all its capital stock, was based in the original bill of complaint, and is now based, on the special act of the general assembly of this state which was passed in 1832 and under which that corporation was created. That act provided that under certain circumstances a stockholder in that corporation would be liable for debts incurred by it.

In our former opinion we held that the superior court properly sustained the demurrer to the original bill of complaint upon the objections thereto presented in the fourth, eighth and ninth grounds of demurrer. One sufficient reason that we gave for so holding was that we could not conceive how an assignment and transfer by Charles B. Allen to his wife of the acknowledgment of indebtedness by the Allen's Print Works to him could have carried with it to her the judgment indebtedness to him of the Woonsocket Company, or any right which he might then have had to collect such judgment indebtedness from the estate of Crawford Allen, no matter with what meaning and intent that transfer was made.

In the complainant's second amended bill of complaint, which is now before us, he has completely abandoned his original contention that by reason of his father's transfer to his mother of the said acknowledgment of indebtedness and her transfer of that acknowledgment to him, he acquired the right to collect from the estate of Crawford Allen the unpaid balance of the original judgment debt of the Woonsocket Company to his father.

In place of that vital contention in his original bill of complaint, the complainant in his second amended bill now relies entirely on allegations set forth in paragraphs 20 to 27, inclusive, to the effect that, by reason of a certain agreement between the complainant and his brother and sister after the death of his father and by reason of expenditures of certain moneys by the complainant at the request of the administrator of the estate of Charles B. Allen, that administrator "did transfer and turn over" to the complainant all of the assets of the estate of Charles B. Allen, then remaining; and that thus the complainant, as stated in paragraph 27 of his second amended bill, "acquired and now holds and possesses any right which Charles B. Allen, in his lifetime, or his estate, may have had against the Estate of Crawford Allen to enforce the stockholder liability of Crawford Allen for the unpaid balance of the original judgment obtained by said Charles B. Allen against the Woonsocket Company, as aforesaid."

But this last allegation, as to the right which the complainant acquired from the administrator of the estate of Charles B. Allen, is only a conclusion of law from the facts previously alleged; and we can only treat it as equivalent to an allegation that by reason of the facts previously alleged the complainant acquired any right which Charles B. Allen had *at the time of his death* against the estate of Crawford Allen.

This leaves entirely open the vital question whether, if the allegations of facts in the present bill of complaint as to conduct by him and by others and as to other events occur-

ring and facts existing during his lifetime are admitted to be true, he had, after receiving and accepting from the Allen's Print Works the above-described acknowledgment of indebtedness, a right to enforce against the estate of Crawford Allen the amount of the former's judgment debt against the Woonsocket Company less the amount received by him from the assignee of that corporation and other sums, which are now alleged to have been received by him from unknown sources and credited by him upon that debt and to have reduced the principal of that debt to $100,000. Unless this question is decided in the affirmative, the demurrer to the present bill was properly sustained by the superior court and the complainant's appeal should be denied and dismissed.

Three of the grounds of demurrer to the first amended bill, which demurrer, by agreement of the parties, became the demurrer to the second amended bill, are as follows:

"4. Even if Charles B. Allen had a claim against Woonsocket Company and against the estate of Crawford Allen by reason of the fact that Crawford Allen was a stockholder of said Woonsocket Company, it does not appear from said amended bill of complaint that the complainant has ever obtained title to such a claim or the right to maintain any action thereon."

"9. If complainant or his predecessors ever had any claim against said Crawford Allen or the representatives of his estate by virtue of the charter provision set forth in paragraph Twenty-Eighth of said amended bill of complaint, said Crawford Allen or his representatives were obligated only as sureties and not as principals and were released by said Charles B. Allen's acceptance of the acknowledgment of indebtedness of Allen's Print Works without reservation of rights against said Crawford Allen or his representatives.

"10. Said amended bill of complaint is without equity."

The allegations of the present bill, with the exhibits incorporated in such allegations by reference, are so diffuse and complicated and therefore require such liberality of

construction, in fairness to the complainant, that we are of the opinion that the grounds of the demurrer thereto should also be liberally construed in fairness to the respondent. We therefore find that among the questions raised by the above-quoted grounds is the above stated "vital question." As a negative answer to it would justify the decision and decree of the superior court sustaining the respondent's demurrer to the present bill, we shall first consider and decide that question, before considering or even stating any of the questions raised by the other grounds of demurrer.

The following are the facts pertinent to this question which are set forth in the allegations of the present bill. On June 23, 1880, Charles B. Allen, as surviving partner of the firm of Philip Allen & Sons, obtained, in a suit against the Woonsocket Company, a decree adjudging that corporation to be indebted to him in the amount of $141,696.76, as of November 15, 1879, and costs. An execution on that judgment was issued and was, on November 8, 1880, levied upon all the property of that corporation in the city of Woonsocket. Before service of that execution could be completed, that corporation, on January 1, 1881, made an assignment for the benefit of its creditors and caused that assignment to be recorded in the land records of the cities of Woonsocket and Providence.

By deed dated July 1, 1871, and recorded in the land records of the city of Providence, that corporation had conveyed to Allen's Print Works, a corporation, the lands, buildings and machinery situated in Providence and constituting the plant theretofore known as the "Allen's Print Works." On April 11, 1879 Charles B. Allen had given notice that the Woonsocket Company, after its indebtedness on which his suit against it was based had been incurred, had, *without consideration,* conveyed its property in Providence, known as the Allen's Print Works, and a large amount of its other assets to the latter corporation, Allen's Print Works:

He also stated in that notice that by virtue of the above described conveyances he claimed "a first lien for such sum as may be finally adjudged to be due him in said cause from said Woonsocket Company, upon all the property of said Woonsocket Company and particularly upon the said print works property known as Allen's Print Works, and also upon all the property of said Allen's Print Works corporation", *etc.* This notice he caused to be recorded in the land records of Providence and Woonsocket and to be published.

He further, on November 10, 1880, caused the execution that he had obtained in his suit against the Woonsocket Company "to be levied upon all the property situated in the city of Providence and Town of North Providence, standing in the name of the Allen's Print Works, a Rhode Island corporation, claiming that in so far as he was concerned said property still belonged to said Woonsocket Company." This language is quoted from paragraph 7 of the present bill.

Thereupon the Allen's Print Works brought a bill in equity entitled *"Allen's Print Works* v. *Charles B. Allen et al.",* and therein, on February 26, 1881, obtained from this court a temporary injunction enjoining him and his sheriff from selling or offering for sale its estates or property under the above-mentioned execution. To that bill in equity Charles B. Allen filed an answer, a copy of which is annexed to the present bill as "Exhibit D", in which he set forth the bringing of his suit against the Woonsocket Company, as above stated, and his recovery of a judgment therein for $141,696.76, as of November 15, 1879. He also stated therein that the Woonsocket Company on the first day of July, 1871, while indebted and liable to him for the account and claim on which his said judgment was later procured, had, without any consideration therefor and with the intent to delay, hinder and defraud him of his aforesaid just and lawful claim, conveyed to said Allen's Print Works corporation the property on which his execution was later levied; and that the Woonsocket Company had also, on July 31, 1871, after

said conveyance, given to the Allen's Print Works corporation the sum of $50,000.

In that answer he further stated "as a matter of law that said conveyance so made by said Woonsocket Company to said Allen's Print Works Corporation with the intent to delay, hinder and defraud this defendant of his just and lawful claim aforesaid, is absolutely void as to this defendant, and that the property so conveyed, in equity and good conscience, should go towards the liquidation of his said judgment", this quoted language being taken from his answer as set forth in the above-mentioned "Exhibit D."

In paragraph 12 of this present bill the complainant avers, on information and belief, "that said Allen's Print Works, for the purpose of protecting itself against the alleged lien and levy of Charles B. Allen on its property and of settling the claims and charges made against it by said Charles B. Allen", as set forth in paragraphs 4 and 9 of the present bill, and stated above, did execute and deliver to him an instrument in writing dated June 1, 1885, and a copy of which is annexed to the present bill as "Exhibit A" and he thereupon "did cease and desist from further prosecuting his said claims and charges against said Allen's Print Works." The substance of this instrument has been hereinbefore stated. The exhibit shows that on the indebtedness to him acknowledged by this instrument that corporation paid him interest at the rate of 5% per annum for nine years, amounting to a total of $45,000.

It is clear, according to the allegations of the present bill of complaint and from the exhibits attached to that bill, that after Charles B. Allen had secured, in court proceedings, a decree adjudging that the Woonsocket Company was indebted to him in a certain large amount and an execution had been issued to him to enforce that judgment upon its property, he had had that execution levied on all the property of that corporation in the city of Woonsocket.

It is clear in like manner that he had also had that execution levied on real estate, apparently of great value, in the

city of Providence and elsewhere in this state, which stood on the land records in the name of the Allen's Print Works, but which he publicly and in court proceedings asserted to have been conveyed to the latter corporation by the former one without consideration and in fraud of the creditors of the latter corporation, including himself.

It is also clear in like manner that when injunction proceedings were brought and prosecuted against him by the Allen's Print Works to prevent him from having these real properties in Providence and elsewhere in Rhode Island sold under and in satisfaction of his aforesaid execution against the Woonsocket Company, as being really the property of the latter corporation, he repeated in his answer in those proceedings, as a defense thereto, his previous assertions that those properties really still belonged to the Woonsocket Company *so far as he was concerned* and that he had the right to have them sold and the proceeds of their sale applied to the payment of that corporation's indebtedness to him.

It is further clear in like manner that in the compromise settlement made between him and the Allen's Print Works of this litigation pending between them, he, in consideration of the rights which he received from that corporation under the so-called "Acknowledgment of Indebtedness", in the amount of $100,000, relinquished to that corporation the right which he had, and had asserted, to have the question legally determined whether those properties in Providence and elsewhere, so far as concerned the judgment indebtedness of the Woonsocket Company to him, really belonged to that corporation or to the Allen's Print Works.

Any right of Charles B. Allen, as a judgment creditor of the Woonsocket Company, to recover from the estate of Crawford Allen as the sole stockholder of the Woonsocket Company an unpaid balance of such creditor's judgment against that corporation must be based upon, and was absolutely dependent upon, the above-mentioned provision in the charter of that corporation, *viz.*: "And all executions which shall be issued against this corporation shall be levied

on the property of the corporation; and *for want thereof,* the stockholders who were such at the time the contract was made or the debt created, shall be liable in their own persons and estates, in the same manner as if the debt or contract had been made by them personally." (italics ours)

It is clear to us that in order to be able to recover under this statutory provision for a stockholder's liability for a judgment indebtedness of a corporation, it is a prerequisite that the judgment creditor prove that he has exhausted every available means he had to collect the judgment indebtedness of the corporation to him by resort to its property. The statute clearly puts upon him the duty of alleging and proving that the corporation had no property by resort to which his judgment could be satisfied.

In the instant cause it was incumbent upon the complainant to allege, in his bill of complaint, facts which, if proved, would justify the conclusion that after his father had recovered the judgment against the Woonsocket Company there was no property by levy of execution on which, as being property of that corporation, his father could have collected the unpaid balance of that judgment. Instead of alleging such facts in his present amended bill, he has only alleged facts which, in our judgment, clearly fall short of satisfying that requirement, because, if proved, they would not show that Charles B. Allen, after accepting the acknowledgment of indebtedness from the Allen's Print Works in compromise of the litigation between them, had a right to enforce against the estate of Crawford Allen the unpaid balance of the former's judgment debt against the Woonsocket Company.

Therefore, we find that the justice of the superior court who sustained the respondent's demurrer to the second amended bill of complaint was justified in so doing, on the issue which we have been discussing; and we see no sufficient reason for discussing the other issues raised by various grounds of demurrer. We also see no good reason for discussing the respondent's appeal from the decree of the superior court by which the complainant was permitted to amend the

342

twelfth paragraph of his amended bill of complaint, as the question presented by that appeal has become immaterial.

The complainant's and respondent's appeals are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Russell W. Richmond,* for complainant.

*Hinckley, Allen, Tillinghast & Wheeler, Edward L. Leahy, Arthur M. Allen, Chauncey E. Wheeler, Isadore Paisner,* for respondent.